UNITED STATES (FELIZ v.). Ssee Case No. 4,720.

---

## Case No. 15,085.

UNITED STATES v. FENELON et al.

[14 Int. Rev. Rec. 182.]

District Court, D. Massachusetts. 1871.

INTERNAL REVENUE—PENALTIES, HOW RECOVERABLE—INDICTMENT—EXPOSING UNSTAMPED ARTICLES FOR SALE.

[1. The penalty of $100 imposed by the act of June 30, 1864 (13 Stat. 296), §§ 167, 169, as amended by the acts of March 3, 1865 (13 Stat. 482), and July 13, 1866 (14 Stat. 144), upon any person exposing for sale articles mentioned in Schedule C, without having affixed thereto the proper stamp denoting that the duties thereon have been paid, is recoverable by indictment, and a civil action is not necessary.]

[2. Persons selling these articles are bound to see that the taxes are paid before the article goes out of their shop; and whether, in the case of a partnership, the sale of an unstamped article is made by one or the other of the partners, or by their clerk, is immaterial, provided it was made

by a person having authority to make the sale. In such case both partners will be liable.]

[3. It seems that, if an article is actually sold from the shop of a dealer without any stamp upon it, the same must be deemed to have been exposed for sale, within the meaning of the statute, even if in fact it had been taken from a package, and placed upon or near the counter, without any intent of then offering it for sale, and was afterwards sold to one offering to buy it, without any intent to violate the statute.]

This was an indictment under sections 167 and 169 of the act of June 30, 1864, c. 173 (13 Stat. 296, 297), as amended by act of March 3, 1865, c. 78, § 1. (13 Stat. 482), and by act of July 13, 1866, c. 184, § 9 (14 Stat. 144). The third count of the indictment alleged that on, etc., at, etc., the defendants [John J. Fenelon and others] "a certain article and commodity named in Schedule C of an act of the congress of the United States of America, entitled 'An act,' " etc., "approved," etc., "to wit, a certain bottle containing a certain extract, to wit, an extract to be used and applied as a perfume, to wit, 'Lubin's Extract, Jockey Club,' so called, did offer and expose for sale; and they, the said (defendants), on," etc., "at," etc., "said article and commodity, to wit, said bottle containing said extract, which said bottle, with its said contents, then and there exceeded the retail price and value of one dollar, and did not then and there exceed the retail price and value of one dollar and fifty cents, to wit, was then and there of the retail price and value of one dollar and twenty-five cents, to Frank H. Freeman did sell, before the duty thereon had been fully paid by affixing thereon the proper stamps, to wit, United States internal revenue stamps of the denomination and value of six cents, as provided by law, against the peace," etc. The government offered evidence that on the day named in the indictment Freeman bought of one of the defendants in their shop the article named in the indictment unstamped, which article at that time was exposed on the outside of a show case, and that the defendants were copartners. The defendants offered evidence that all such articles, when they arrived at their store, were placed on a table, and outside the show-case, prior to being stamped, and, after being stamped, were placed inside the show-case, and then only were intended for sale; and that one of the defendants was not present at the time of sale, and seldom visited the shop, but had charge of another place of business on another street. To rebut the defendants' evidence, the government offered evidence that, a few days after said sale, revenue officers visited the defendants' shop, and found many articles unstamped inside, as well as outside, the show-cases; and, upon asking one of the defendants how many revenue stamps he had on hand, he replied, after making search, "Not any."

D. H. Mason and F. W. Hurd, for the United States.

H. D. Hyde and M. F. Dickinson, Jr., for defendants.

LOWELL, District Judge (charging the jury). The only count of this indictment which is now relied on is the third out of the four which originally were found by the grand jury, the other three having been made to meet the construction of the law, which has not prevailed after argument, although it had a very fair coloring of right, undoubtedly, in its favor at the start. The court has decided—I have decided, as well as I might—(U. S. v. Houghton [Case No. 15,396]) that the acts charged in the first, second, and fourth counts are not punishable under the statutes; and therefore remains the third. The third is founded on the law, which has already been read to you. "that any person who shall offer for sale any of the articles named in Schedule C, whether of foreign or domestic manufacture, etc., shall be deemed the manufacturer, and shall be liable to the duties and penalties and the liabilities imposed by law in regard to the sale of domestic articles without the use of the proper stamp or stamps denoting the duty to be paid thereon." That refers back to another section, which is that "every manufacturer (showing what these people are to be liable to) who shall sell any of the articles mentioned in Schedule C, before the duty thereon shall have been fully paid by affixing a proper stamp, shall be liable to a penalty of one hundred dollars." Now, it has been held that that penalty, if incurred, may be recovered by an indictment. U. S. v. Abbott [Case No. 14,416]. That, again, was a question of some considerable doubt whether it should not be an action of debt or civil action.

Taking the whole statute together, and looking at the numerous penalties therein prescribed for various offences, and the mode of enforcing them, it was considered, on the whole, that it was the intent of congress that these penalties—most of them, this one amongst others—should be recovered by indictment. It is scarcely more than a question of the form of action, because it is very plain, on this statute, and it is admitted by both sides here, and urged by both sides here, that it is a penalty affixed for mere neglect, without any regard to any willfulness, any purpose, any intent to defraud the government; that for the mere neglect, if it be one, of selling one of these articles before the duty has been fully paid by stamp by the manufacturer, or by the seller, if the manufacturer has not done so,—before the duty shall have once been fully paid by affixing the proper stamp, —the penalty is incurred, whether there was any intention not to pay, or even any knowledge on the part of the seller that he or somebody else had not paid. Therefore, it is not really a criminal offence, and it was by a construction of the statute, from which the intent of congress was discovered, to enforce the penalty in this mode, rather than from any idea that the offence itself was criminal in the ordinary acceptation of the word, that this decision was arrived at. There are some

indictments known to the common law for matters which are not really criminal, such as an indictment, as you may have heard, against a town for not keeping its bridges in repair, or something of that sort. Still they are rather rare. This is one of those indictments which lies to recover a penalty, which perhaps might more appropriately be recovered by a civil action. Still, this being so, the parties on the one side and the other, undoubtedly are put in the position, so far as the trial of the case is concerned, so far as the evidence is concerned, of a criminal action. The government are bound to make out their case beyond any reasonable doubt. And the charge here is that these defendants did sell a bottle of an extract, called "Lubin's Extract of Jockey Club," to Mr. Freeman, on the 22d of May, before the duty had been fully paid by affixing the stamp of six cents, or whatever it was; and that is the question to be considered. The law means, as I understand it, that the persons who deal in these articles, whether manufacturers or not, shall see to it that these taxes, which are undoubtedly very small, trifling in each particular instance, are paid, and that, if that is not done, the failure is punished by penalty —very large, undoubtedly, in this instance— in proportion to the loss which the government has suffered by the particular sale; but with that we have not much to do, at this time. The penalty is exactly no more and no less than $100. Persons selling are bound to see to it that these taxes are paid before the article goes out of their shop, and, whether the mistake is committed by themselves, or by one of them, or by their clerk, so it was committed by a person who had authority to make the sale, then it was committed by them, and the penalty has accrued. From that point of view, it is of no sort of consequence whether one or the other of the persons charged, if they are jointly interested in the business, made the sale, if the sale was made, or whether it was made by either of them if it was made by their authority. Now, it is not denied that this sale was made without the duty having ever been paid, either by the manufacturer or by any intermediate person, or by the defendants; not likely to have been paid by anybody else, because these articles are of foreign manufacture, and the foreign manufacturer does not care anything about our law, and never puts stamps on. And, if bought from the importer, the importer is not bound to put the stamps on, unless he breaks the original packages. It is not denied that the article was sold for the benefit and in the interest of these two defendants.

The only question, so far as I can see, though you are bound, of course, to pass upon all the facts, is whether, in respect to this article, they were under any obligation to stamp it. The charge in the indictment is that these defendants did offer this article for sale, and so are manufacturers, and bound to stamp it; and the defendants say they "did not. They never offered it for sale. Therefore they are not manufacturers. They are not quasi-manufacturers, put in the position of manufacturers, and bound therefore to stamp this article." That is to say, the argument, as far as I can understand it, is a question of fact in that aspect. The argument is that, without having ever offered the article for sale, without intending or meaning to sell it, Mr. Freeman came in there, and, taking up an article which was not offered, which nobody meant to sell, and nobody intended to sell, he did induce one of the defendants to let him have it for a price, and that it accidentally got out without being stamped for that reason; that their goods, when really offered or intended to be offered for sale, were always stamped, or at any rate were always intended to be stamped, and were used only after they were stamped; that very fact was denied by the government, and they say, as a matter of fact, that the articles that were intended for sale, were as much left unstamped as any other article. They take issue on the fact. But the government also say that, when a person does sell an article, he thereby offers it for sale. If he consents to sell it, he offers it to sell; and that, in my judgment, is the meaning of the law. Congress, when it says that persons who offer these articles for sale shall be in the position of manufacturers, and liable to the same duties, simply means to say that sellers of these articles should be in the same position as manufacturers, that is all. Well, then, if a person came to your house, and saw a bottle of cologne on your table, and induced you to let him have it for a price, it would not make you a manufacturer, nor a quasi manufacturer of that article. The intention is to define those people who are liable to see to it that these things are stamped. A person who merely by accident, not following the business, makes one sale, not being a dealer, if that is really the fact, has no duty to perform about it one way or the other, because that duty has already been performed, or left unperformed, before the goods ever came into his possession. It is no duty of a purchaser, who wants these articles for use, to stamp them; and, although he might be induced by a neighbor afterwards to sell, selling, I mean, strictly speaking, by accident, and without any previous intent, not being a dealer at all, he would have no duty to perform. But when it comes to a dealer, I suppose that the meaning is that you know him to be a dealer because he offers such articles for sale. Instead of saying "a dealer" in those articles, which congress thought might be a little ambiguous, they say "any person who sells" them.

The indictment, however, happens to confine the offering and exposing to this particular bottle, and then the question is whether the dealer was bound to stamp that bottle,

whether he ever offered it for sale; because that is the allegation, that he did offer this for sale. Well, my impression is that, as applied to the dealer, that must mean pretty nearly the same thing as selling it, when he did sell it; that he could not have sold it without offering or exposing for sale as well. If a man carried it off first, and paid for it afterwards, and had taken it in such a way that the dealer could not know whether it was stamped or not, had not his attention been called to it, that might be a different matter; but, when a man goes in and buys a thing from a dealer in what appears to be the ordinary course of trade, I think it would be very difficult to draw the line, and say that, although sold, that article was never offered for sale. However, it has been argued to you as a question of fact. and, as such, I leave it with you, whether this article was ever offered for sale by these defendants,— that is to say, in the interest of their business, for that is all it means (it does not mean any personal act of theirs necessarily, but by any one authorized to sell their goods); and, if so, whether it was sold to the person named in this indictment, Mr. Freeman, on or about the 22d day of May last, without the duty having first been paid by affixing the proper stamp.

The jury returned a verdict of guilty against both defendants.